IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ALMA MICHELLE HERRING,          §
                                §
                Plaintiff,      §
                                §  Civil Action No. 4:10-CV-583-D
VS.                             §
                                §
MICHAEL J. ASTRUE,              §
COMMISSIONER OF SOCIAL          §
SECURITY,                       §
                                §
                Defendant.      §

MEMORANDUM OPINION

Plaintiff Alma Michelle Herring ("Herring") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under titles II and XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

Herring filed applications for DIB and SSI benefits, alleging that she had been disabled since January 26, 2008 due to diabetes, chronic obstructive pulmonary disease ("COPD"), asthma, and depression/bipolar disorder. Her applications were denied initially and on reconsideration. Herring requested a hearing before an administrative law judge ("ALJ"). At the time of the hearing, Herring was 40 years old and had a ninth grade education.

Following a hearing, the ALJ determined that Herring was not

disabled during the adjudicative period of January 26, 2008 through March 30, 2009 and not eligible for DIB or SSI payments. Applying the five-step sequential process, the ALJ found at step one that Herring had not engaged in substantial gainful activity since her alleged onset date of January 26, 2008, having lost her previous job after an argument with her boss. He found at step two that Herring had the following severe impairments: asthma, affective mood disorder, bipolar disorder, obesity, and COPD, but not by diabetes. The ALJ determined at step three that Herring did not have a medically determinable impairment or combination of impairments that met or equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, even when considering the combined impact of her respiratory, cardiovascular, and mental impairments. The ALJ concluded at step four that Herring is unable to perform any of her past relevant work as an informal waitress, a hand packager, or a convenience store checker. At step five, the ALJ concluded on the basis of Herring's residual functional capacity ("RFC"), age, education, and work experience that she can perform other relevant work that exists in significant numbers in the national economy: cashier II, injection molding machine tender, and small products assembler II. The ALJ therefore concluded that Herring was not disabled within the meaning of the Act at any time through the date of his decision. Herring's request for review of the ALJ's decision was denied by the Appeals Council, and the ALJ's

decision became the final decision of the Commissioner.

Herring now seeks judicial review on the following two grounds: first, that the ALJ's decision that Herring can perform jobs is based on a defective hypothetical question to the vocational expert ("VE") because it did not include her impairment in social functioning; and, second, that the ALJ failed to adequately evaluate the opinions of the medical experts ("MEs") who concluded that Herring has a severe personality disorder and impairment in social functioning.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations

omitted).  "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed."  *Martinez*, 64 F.3d at 173.  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It is more than a mere scintilla, and less than a preponderance."  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).  "To make a finding of 'no substantial evidence,' [the court] must conclude there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings.  *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for the court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett,* 67 F.3d at 563; *Martinez,* 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2010). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record

considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

### III

Herring first contends that the ALJ's decision is fatally flawed because it is based on a step five finding that she can perform jobs that exist in significant numbers in the national economy, which in turn is based on a defective hypothetical question to the VE that did not include her impairment in social functioning.

A

> Unless the hypothetical question posed to the
> vocational expert by the ALJ can be said to
> incorporate reasonably all disabilities of the
> claimant recognized by the ALJ, and the
> claimant or his representative is afforded the
> opportunity to correct deficiencies in the
> ALJ's question by mentioning or suggesting to
> the vocational expert any purported defects in
> the hypothetical questions . . . a
> determination of non-disability based on such
> a defective question cannot stand.

*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling*

*v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). The ALJ posed a

hypothetical to the VE that did not explicitly refer to limitations

on Herring's social functioning.[1] In response, the VE opined that

---

[1]The ALJ posed the following question to the VE:

> Assume for me an individual of the same age,
> education and vocational history as the
> claimant. Further assume that this
> hypothetical individual would have the
> following limitation. Lift and carry
> occasionally 20 pounds, lift and carry
> frequently no more than 10 pounds, stand and
> walk about two hours in an eight-hour day and
> sit about six hours in an eight-hour day. No
> climbing of scaffolds, ropes, or ladders,
> occasional ramps and stairs, occasional
> balancing, also occasional kneeling,
> crouching, crawling and stooping . . . . No
> work around hazardous moving machinery. No
> work in excessive humidity. No work at
> unprotected heights. No work in excessive,
> [sic] areas of excessive fumes, odors, dust;
> gases, chemicals or in poorly ventilated
> areas. Be able to understand, remember and
> carry out short, simple instructions in a
> simple and routine work environment. In a
> simple and routine work environment could
> respond appropriately to supervision and

such a person could work as a "cashier II," "injection molding machine tender," and "[s]mall products assembler II." R. 39-40. Herring's attorney asked two follow-up questions: first, whether Herring's subjective testimony on problems with concentration, staying on task, becoming easily irritable and agitated with others would pose further job limitations; and, second, whether Herring's need for two or three 15-20 minute breaks in addition to the typically-permitted restroom and lunch breaks would be "considered excessive" in the types of jobs mentioned by the VE. R. 39-40. The VE responded that the effect would depend on the severity and that the breaks described would be considered excessive.

Herring maintains that the ALJ's decision is fatally flawed because it is based on the VE's response to a defective hypothetical that did not incorporate limitations in social functioning.

The Commissioner responds that the ALJ *did* account for Herring's moderate limitations in social functioning because he specified in his question that he was inquiring about a hypothetical person who, "[i]n a simple and routine work environment could respond appropriately to supervision and

coworkers and usual work pressures . . . .
Would there be other jobs in the national or regional economy that such a person could perform?

R. 38-39.

coworkers and usual work pressures." R. 39. The Commissioner also maintains that any error is harmless because two of the jobs the VE identified——injection molding machine tender and small products assembler II——require a "not significant" level of interpersonal interaction.

Herring replies that the Commissioner's alternative argument is contrary to the policy of the Social Security Administration's policy that recognizes that the ability to respond to supervision is a basic requirement of unskilled work. She cites Social Security Ruling ("SSR") 85-15, which provides, in relevant part, that "an individual who cannot tolerate being supervised may be not able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons." SSR 85-15, 1985 WL 56857 (S.S.A.), at *6 (1985).

Herring also disputes the Commissioner's position that the ALJ incorporated a limitation for social functioning in his hypothetical question. She maintains that when her representative asked the VE about whether Herring's irritability and agitation toward others would further limit the types of jobs she could maintain, the VE opined that it could, depending on the severity, even though these are simple, routine repetitive jobs. Herring contends that the VE's response to her representative's question

shows that he did not understand that a problem with the ability to interact with others was a component of the ALJ's hypothetical and did not address this limitation in his answer.

                                   B

The court concludes Herring has failed to demonstrate reversible error. The ALJ was only obligated to reasonably incorporate in his hypothetical all of Herring's disabilities that he recognized. See *Boyd*, 239 F.3d at 707. The ALJ found, *inter alia*, that Herring is able to respond appropriately to supervision, coworkers, and work pressures. If the ALJ considered the social functioning limitation when determining the RFC and this RFC finding is supported by substantial evidence, it was not necessary that he directly include in his hypothetical a limitation for social functioning.[2]

---

[2]*See LeCoq v. Barnhart*, No. 3:04-CV-0825-D, slip op. at 17-18 (N.D. Tex. Aug. 24, 2005) (Fitzwater, J.) (upholding RFC finding that claimant could "relate to coworkers and supervision," even though it did not expressly mention a moderate limitation of social functioning, after balancing medical experts findings of moderate limitation in social functioning together with expert opinion that claimant would be "able to relate to coworkers and accept supervision, albeit with some difficulty due to her propensity for anger and irritation"). Because there was substantial evidence to support the RFC statement, the court concluded in *LeCoq* that the claimant had not shown that the ALJ failed to incorporate reasonably in the hypothetical all of the claimant's disabilities that the ALJ recognized. *Id*. at 21. *See also, e.g.*, *Gipson v. Astrue*, 2011 WL 540299, at *6-7 (N.D. Tex. Feb. 11, 2011) (Toliver, J.) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments); *Charland v. Astrue*, 2010 WL 624047, at *7 (N.D. Tex. Aug. 15, 2009) (Stickney, J.), *rec. adopted,* (N.D. Tex. Feb. 22, 2010) (Boyle, J.) (accepting that

hypothetical incorporated moderate social functioning impairment by including limitations such as "simple instructions in a simple and routine work environment," "interact[ing] appropriately with supervisors, co-workers," and "respond[ing] to usual work pressures"); *Vaughn v. Astrue*, 2009 WL 3874607, at *6 (N.D. Tex. Nov. 2) (Sanderson, J.), *rec. adopted*, (N.D. Tex. Nov. 17, 2009) (Lindsay, J.) (upholding ALJ's findings as supported by substantial evidence and finding that hypothetical reasonably incorporated impairments ALJ found, despite failure to include moderate social functioning limitation).

*But see Voyles v. Comm'r of Social Sec. Admin.*, 2011 WL 825711, at *9 (N.D. Tex. Feb. 16) (Stickney, J.), *rec. adopted*, (N.D. Tex. Mar. 4, 2011) (Boyle, J.) (concluding that hypothetical requiring "fairly simple, routine, repetitive type tasks" did not "adequately encompass[]" finding that claimant had moderate limitation in ability to "maintain concentration, persistence, or pace"); *Ellis v. Astrue*, 2010 WL 3422872, at *5 (N.D. Tex. July 27) (Stickney, J.), *rec. adopted*, (N.D. Tex. Aug. 27, 2010) (O'Connor, J.) (holding there was reversible error in hypothetical that specified *no* social functioning limitations, when ALJ's RFC indicated *mild* restriction in social functioning); *Tusken v. Astrue*, 2010 WL 2891076, at *11-12 (N.D. Tex. May 25) (Cureton, J.), *rec. adopted*, (N.D. Tex. July 20, 2010) (McBryde, J.) (holding there was error where, despite finding mild difficulty in maintaining social functioning, ALJ did not include any mental limitations in RFC or hypothetical). These cases are distinguishable from Herring's case. Here, the ALJ included limitations in the hypothetical to reflect Herring's moderate limitation in social functioning (unlike the ALJ in *Ellis* and *Tusken*), and the ALJ in Herring's case did not rely on a hypothetical that explicitly contradicted his findings of social functioning limitations (e.g., he did not hypothesize about a "mild limitation" after he found a "moderate limitation"). Substantial evidence supports Herring's RFC determination and hypothetical; substantial evidence did not support the findings in *Voyles*, *Ellis*, and *Tusken*.

There is one case that the court has found in this district that required that the hypothetical include verbatim the social limitations found during earlier steps of the five-step sequential process. *See Cox v. Astrue*, 2008 WL 4936388, at *6-7 (N.D. Tex. Nov. 18, 2008) (Stickney, J.) (on reconsideration) (determining that ALJ failed to incorporate reasonably all recognized disabilities by failing to include "mild to moderate social functioning limitation" in hypothetical, despite hypothetical that mentioned "diminished ability to relate appropriately with peers and coworkers"). Absent a Fifth Circuit decision that supports

In determining Herring's RFC,[3] the ALJ considered all medically determinable impairments, including the following evidence: evidence from a February 2008 examination that Herring exhibited only mild symptoms of bipolar disorder; May 2008 evidence from Stella Nwankwo, M.D. ("Dr. Nwankwo") that Herring's neurological examination yielded essentially normal results and that Herring's bipolar disorder was stable on medication; May 2008 evidence from Ann Baker, Ph.D. ("Dr. Baker") diagnosing Herring with bipolar disorder and schizotypical personality disorder; and recent evidence indicating that Herring had improved while on medication. R. 15. After assessing Herring's social functioning levels, the ALJ concluded that Herring had only "moderate limitations" based on her acknowledgment that she has "no particular difficulties getting along with others, and she has at least one friend and attends church at times." R. 16. Based on the medical evidence, the ALJ found that Herring's "exertional and nonexertional capabilities are compromised, but not to the degree alleged (*i.e.*, an inability to work in any capacity)," and

---

requiring the ALJ to include each limitation verbatim in order to comply with the requirement to "incorporate reasonably all disabilities," the court adheres to the approach it took in *LeCoq*.

    [3]As provided in 20 C.F.R. § 404.1520(g) and § 416.960(c), step five requires consideration of Herring's RFC, which is defined in 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1), as "the most you can still do despite your limitations." This assessment requires consideration of all medically determinable impairments of which the ALJ is aware, including medically determinable impairments that are not severe. *See id*. at §§ 404.1545(a)(2) & 416.945(a)(2).

explained, "I have also provided nonexertional restrictions consistent with the most liberal interpretation of her impairments and symptoms, including a wide range of postural, environmental, and mental limitations." R. 18.

After considering all of these symptoms, the ALJ found that Herring had the following RFC:

> The claimant retains the [RFC], over a sustained period of time, to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday, further limited by no climbing ladders, ropes, or scaffolds; only occasional climbing ramps or stairs; and only occasional balancing, kneeling, crouching, crawling, or stooping; with no exposure to hazardous moving machinery, excessive humidity, unprotected heights, or excessive fumes, odors, chemicals, dusts or gases; with no manipulative or visual/communicative limitations; and with the ability to sustain work mentally; understand, remember, and carry out short, simple instructions; make judgments on simple work-related work decisions; and respond appropriately to supervision, co-workers, and work pressures.

R. 13-14 (citations omitted). The ALJ's hypothetical tracked each limitation that he found. Therefore, he did not commit reversible error. The ALJ sufficiently accounted for Herring's limitations in social functioning in his assessment of her RFC by recognizing her moderate limitations in social functioning in his analysis before ultimately determining that those limitations were sufficiently moderate for Herring to respond appropriately to supervision,

coworkers, and work pressures in a simple and routine work environment. *See* R. 14, 16.

## IV

The second ground on which Herring seeks relief is the contention that the ALJ failed to adequately evaluate the opinions of the MEs who concluded that Herring has a severe personality disorder and impairment in social functioning.

## A

Herring maintains that the ALJ erred by relying on excerpts from one part of Dr. Baker's report concerning Herring's functioning outside a work setting——such as Dr. Baker's statement that Herring "has one friend" and "goes to church twice a month"——without also mentioning Dr. Baker's observation that Herring "has frequently had problems with bosses and authority figures." R. 324. She posits that the ALJ acknowledged in his decision that she has a history of difficulty interacting with employers, and that he concluded that Herring lost her last job because she got into an argument with her boss. She cites *Stearns v. Astrue*, 2010 WL 1072828 (N.D. Tex. Mar. 24, 2010) (Lane, J.), in which Judge Lane held that the ALJ erred in failing to include a limitation related to interacting with others, particularly supervisors, where the ALJ's decision indicated that a psychologist had noted a history of problems with supervisors, employers, and others. *Id.* at *6.

Herring also contends that the ALJ also failed to mention the opinion of Norvin Curtis, Ph.D. ("Dr. Curtis"), the state agency nonexamining medical source, who opined that Herring has a moderate impairment in four of the five areas of social interaction rated in a mental RFC assessment dated June 16, 2008, including impairments in interacting with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors, in the ability to get along with coworkers or peers, in the ability to maintain socially appropriate behavior and adhere to basic standards of cleanliness. She posits that the ALJ's failure to discuss Dr. Curtis' opinion violates SSR 96-6p, which provides that, although ALJs are not bound by any findings made by state agency medical or psychological consultants, they must consider such findings as opinion evidence. *See* SSR 96-6p, 1996 WL 374180 (S.S.A.), at *1-2 (1996).

The Commissioner responds that the ALJ evaluated all of the evidence before formulating his RFC assessment and performed a detailed discussion of Herring's alleged mental limitations. Regarding her complaint that the ALJ did not specifically cite Dr. Baker's opinion that Herring "has frequently had problems with bosses and authority figures," the Commissioner contends that the ALJ was not required to quote every passage from a consultative examiner's opinion. The Commissioner also points out that Dr. Baker noted that Herring was now on medication and was no longer

abusing drugs, so her mental condition had perhaps somewhat improved. The Commissioner also posits that other medical records support Dr. Baker's conclusion that Herring's condition had improved, and that Herring's emphasis on one passage from a non-treating physician's[4] opinion is misplaced. And the Commissioner distinguishes *Stearns* on its facts.

In response to Herring's complaint that the ALJ failed to discuss Dr. Curtis' opinion, the Commissioner maintains that the ALJ considered all of the opinion evidence in the record, as required. The Commissioner also maintains that Dr. Curtis opined that Herring had no marked limitations in social interaction and was only moderately limited in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 347. He posits that, contrary to Herring's assertions, the ALJ properly accounted for such factors in the RFC by noting that Herring could respond appropriately to supervision and coworkers, as well as usual work pressures, provided they occurred in the context of a simple, routine work environment.

---

[4]Dr. Baker is not a physician, although the Commissioner referred to her as one.

In reply, Herring cites a lack of evidence in the record or the presence of other evidence that she maintains undercuts the Commissioner's responsive arguments about Dr. Baker.

B

The court holds that Herring has not demonstrated reversible error.

Herring's reliance on *Stearns* is misplaced because that case is distinguishable. In *Stearns* there was evidence that the claimant had held 600 jobs since returning from Vietnam, had a history of post-traumatic stress disorder, had a history of losing jobs due to temper and hitting bosses, had "marked limitations" in ability to interact with public, supervisors, and coworkers, and had an "extreme limitation" in ability to respond to work pressures in usual work setting. *Stearns*, 2010 WL 1072828, at *5. To counter this evidence, the ALJ merely noted that the plaintiff had a few good friends from church and got along well with others when he was on his medication. *Id.* Judge Lane applied the substantial evidence standard and concluded that there was no substantial evidence to support the ALJ's opinion that the plaintiff should be limited in his contact with public but that no other limitations were necessary. *Id.* at *7. Although "[t]he task of weighing the evidence is the province of the ALJ" and "[t]he relative weight to be given these pieces of evidence is within the ALJ's discretion," *id.* at *6 (citing *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th

Cir. 2001)), Judge Lane must have concluded that no reasonable mind would accept the existence of a few good friends and the ability to get along with others on medication as adequate to counter the overwhelming evidence indicating that more limitations were necessary than merely limiting the claimant's contact with the public.

By contrast, a reasonable mind could weigh the facts of this case and find adequate evidence to support the ALJ's RFC assessment. The ALJ's determination in this case differs in two respects from the determination in *Stearns*.

First, Herring's troubles at work were far less extreme than were those of the claimant in *Stearns*, such that a reasonable mind could conclude based on the evidence that Herring is only moderately impaired in social functioning. The ALJ noted Herring's statement that she had no particular difficulties getting along with others, *see* R. 16 (citing R. 145 (reporting that she gets along with "family, friends, and others")), and he observed that she "does not exhibit highly antagonistic, uncooperative, or hostile behavior." *See* R. 16. Although Dr. Baker noted that Herring had "frequently had problems with bosses and authority figures," R. 323, and Herring reported at one point, "I don't get along with people," R. 364, other assessments in the record indicated that Herring was only moderately limited in her "ability to accept instructions and respond appropriately to criticism from

supervisors" and "the ability to get along with coworkers or peers." R. 347; *cf. Cantrell v. McMahon*, 227 Fed. Appx. 321, 322 (5th Cir. 2007) (per curiam) (upholding ALJ's definition of moderate——"there are some moderate limitations, but the person can still perform the task satisfactorily"——as not inconsistent with the regulations). When asked how she reacts to criticism, Herring responded: "At work when criticize[d] I walk off and quit. Can[']t handle negative hateful people[.] I get scared[,] afraid to what I might do, get angry easily[.]" R. 147. But in the same response, she also said: "I really will do what they tell me to do[.] I don[']t like confrontations." *Id.* When asked "How well do you get along with authority figures? (For example, police, bosses, landlords, or teachers)," Herring responded, "Good. I am on parole so I follow rules." R. 162. This further suggests that Herring is able to respond appropriately to supervisors and coworkers in the proper environment when given sufficient incentives. Numerous sources also indicated that Herring's general mental condition had become more stable after starting medications, to the point that one evaluation rated her social functioning disorder as a "3" (where "1" means "No symptoms" and "4" means "Moderate"). *See* R. 205 and 330. Although there is evidence that would have permitted the ALJ to find that Herring cannot respond appropriately to supervisors and coworkers in a simple and routine environment, the ALJ was not required to reach this conclusion, and

his factual findings are supported by substantial evidence. In any event, this court cannot substitute its view of the evidence for the ALJ's. *See, e.g., Bowling*, 36 F.3d at 434 ("[A court] may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision."); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1998) (per curiam) (permitting finding of no substantial evidence only if no credible choices or medical findings exist to support decision). That the ALJ did not quote directly from one portion of one evaluator's report that is favorable to Herring does not negate the fact that there is sufficient evidence elsewhere in the record to uphold his finding that Herring was only moderately limited in her social functioning.

Second, it would be a flawed comparison to assess the ALJ's RFC statement against the statement in *Stearns*, because (as determined by the ALJ) Herring had less severe mental limitations than did the *Stearns* claimant. For example, the psychological rating indicated "marked limitations" in Stearns's ability to interact appropriately with the public, supervisors, and coworkers, and an "extreme limitation" in his ability to respond appropriately to work pressures in a usual work setting. Yet Stearns's RFC only specified the following limitation in social interaction in a work setting: "jobs that do not require more than superficial contact

with the public." *Stearns*, 2010 WL 1072828, at *3 and *5. Herring, by contrast, had only "moderate limitations" in her social functioning, and Dr. Curtis opined in his functional capacity assessment that Herring was "moderately limited" in her ability to "interact appropriately with the general public," "ability to accept instructions and respond appropriately to criticism from supervisors," "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." R. 347. Given that Herring's social limitations were only moderate, there is substantial evidence to support the conclusion that Herring could "respond appropriately to supervision and coworkers and usual work pressures" in a "simple and routine work environment." R. 14 and 39.

This court is not permitted to reweigh the evidence, and although the ALJ did not discuss every piece of potentially relevant evidence in each step of his analysis, this is not required. And the ALJ's RFC and limitations findings are supported by substantial evidence.

Concerning Herring's contention that the ALJ failed to consider the mental RFC Assessment of Dr. Curtis, assuming *arguendo* that the ALJ erred, the error is harmless. This is so because the ALJ's conclusions are entirely consistent with Dr. Curtis' opinion:

Dr. Curtis found Herring to be moderately limited in four out of five categories in "social interaction" (the remaining category was assessed as "not significantly limited"), *see* R. 347, and the ALJ similarly concluded that Herring "has only moderate limitations in her social functioning due to mental impairment" and cited other evidence in support of that finding, *see* R. 16.

*     *     *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

April 22, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE